[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 157 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 158 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 159 
OPINION
Marianne F. (Marianne) appeals an order of the juvenile court declaring her sons, Joseph W. (Joseph) and Basilio T., Jr., (Basilio Jr.), dependent children of the court under Welfare and Institutions Code[1] section 300, subdivision (b), as well as a dispositional order removing the minors from her home. Basilio T. (Basilio), the father of Basilio Jr., also appeals from these orders as they relate to his son. Both parents raise insufficiency of the evidence arguments to support the court's jurisdictional findings, including the argument it was error to use Basilio Jr.'s statements in *Page 160 
the social study report after the trial court found Basilio Jr. not competent to testify. Additionally, it is contended there was insufficient evidence to support removal of the minors from parental custody, and the trial court failed to make the proper legal findings to support the removal of custody. Both parents also contend it was improper for the court to order drug testing and substance abuse therapy as part of the reunification plan.
 FACTS
Marianne and Basilio have been involved in a relationship since approximately 1985. In the fall of 1990, when the events that led to this proceeding occurred, they were living together in a two-bedroom apartment along with their four-year-old son, Basilio Jr., and six-year-old Joseph, Marianne's son from a different relationship.
On September 6, 1990, police were called to investigate a report of an assault with a knife involving Marianne and Basilio. Marianne decided not to press charges. According to the police report, police observed Marianne and Basilio's apartment, which did not have much furniture or food; there also were piles of dirty clothes in the apartment. The officers decided not to place the children in protective custody, but rather to ask the maternal grandmother to take care of the children temporarily.
On October 16, 1990, police were called to respond to another domestic violence incident at the apartment of Marianne and Basilio. According to Marianne, Basilio had struck her and forced her out of their home. According to the police report, police found Marianne outside the apartment naked; however, a neighbor testified that Marianne was wearing clothes and Basilio testified she was wearing a robe. Marianne requested Basilio be arrested, and he was removed from the apartment. Inside the apartment, police found no furniture, very little food, a single mattress for the children without sheets, general disarray and dirty conditions. Neighbors interviewed by the police said Marianne often screamed during the early morning hours and hit the children. Marianne had a change of heart and declined to press charges against Basilio, who was released. This time, however, the police placed the children in protective custody and took them to Hillcrest Receiving Home.
The following day, Richard Hajek, a social worker, interviewed the minors who both said they had seen violent fighting between Marianne and Basilio. Joseph stated: "They fight sometimes. He always calls her a monkey or a bitch. I don't like him because he hits my mom." Joseph also related he experienced bad dreams almost on a nightly basis. Basilio Jr. stated: "My mom and dad fight. I saw blood." *Page 161 
On October 18, 1990, the department of social services (DSS) filed petitions under section 300, subdivision (b), alleging Joseph and Basilio Jr. were exposed to violent confrontations in the family home between Marianne and Basilio, and, as a result, there was a substantial risk the minors would suffer physical harm.
At a detention hearing on October 19, 1990, each parent denied the allegations of the petitions. The trial court found the minors could not safely remain at home and ordered DSS to evaluate the home of the maternal grandmother for possible placement.[2] Also on October 19, 1990, the trial court ordered (1) supervised visitation for the parents, (2) drug testing for mother and father and funding be authorized for such tests, and (3) funding be authorized for psychological evaluations of the parents.
A contested jurisdictional hearing was conducted on January 29, 1991, February 4, 1991, and February 15, 1991. During the first session of the jurisdictional hearing, Glen Green, a next-door neighbor, testified he heard Marianne and Basilio arguing for about 30 minutes between 2 and 3 p.m. on October 16, 1990. At the time, the minors were playing outside in front of the apartment. On his way out of the apartment, Green saw Marianne fully clothed, knocking on another neighbor's door. When Green returned 20 minutes later, the police were there. Green testified this was the first time he had heard the couple argue. He also testified he had never been awakened by the couple in the middle of the night and had not seen the children outside after dark.
During the second session of the jurisdictional hearing, the minors were examined in chambers pursuant to section 350. The trial court found Basilio Jr. not competent to testify at trial "due to his inability to distinguish between the truth and a lie." Joseph, who was found competent, testified he did not remember his mother fighting with Basilio. Joseph also testified Basilio did not call his mother bad names and he was not afraid of his mother and Basilio. The trial court denied a motion by both Marianne and Basilio to exclude from evidence those portions of the social study pertaining to statements made by Basilio Jr. to the social worker based on the finding Basilio was incompetent to testify. The trial court stated: ". . . I am going to admit [Basilio Jr.'s] statements into evidence as set forth in the social study under the provisions of [In re Malinda S. (1990)51 Cal.3d 368)], as to the weight to be accorded to those statements. That will be adjudged by the court on a separate basis.
"I am not accepting the statements, in other words, for the fact that they themselves are true, and I will take into account the additional evidence that *Page 162 
may be presented at this trial, as well as the demeanor of the minor witness in chambers, when I decide how much weight should be accorded to those statements." Next, social worker Hajek began his testimony, stating he briefly interviewed Basilio Jr. within 24 hours of his being taken into protective custody. Hajek said Basilio Jr. appeared to be comfortable during the interview and appeared to be forthcoming and truthful in his statements. Subsequently, the trial court admitted into evidence Hajek's social study report dated November 28, 1990.[3]
After the social worker concluded his testimony at the third and final session of the jurisdictional hearing, counsel for Marianne moved for dismissal of the petition on the basis of insufficiency of the evidence. The motion was denied. Basilio proceeded to testify that on October 16, 1990, he and Marianne had an argument with raised voices and she walked out of the apartment and asked a neighbor to call the police. After she left the apartment, Basilio locked the door to prevent further confrontations between the two of them until the police arrived. Basilio also testified that he and Marianne had argued on some other occasions as well, and the children may have heard the arguments. He also said that during one argument with Marianne she cut herself with a knife, but denied ever hitting Marianne. Later, Basilio said that Marianne's bleeding on that occasion was caused by a snagged fingernail and not a knife cut. Marianne did not testify.
The trial court then made a true finding on the petitions, stating in part:
"I will state for the record that I have found the testimony of Glen Green to be credible. I believe what he told the court, as far as never having heard the children cry or seen them out after dark unless they were with the mother, that his observance on the morning [sic] in question in October was that the mother was clothed and that he was home during most of this period of time, so he would be available to observe the behavior of the family in general.
"I also note for the record that there are numerous statements in the social study dated November 28, 1990, which are hearsay, the third level of hearsay, and that the court is mindful of that fact and has taken that into account in its deliberations.
"Specifically as to the weight to be accorded to the statements, I have taken that into consideration since the social worker did not personally speak *Page 163 
with the officers. I have also taken into consideration the fact that the police officers were — that the social worker was unable to personally assess the credibility of those officers. I have also taken into account the fact that those police officers were not subpoenaed or cross-examined here today. . . .
"The court did not find the father's demeanor overall to be credible as far as his statements. The minors' statements as previously indicated will be accordingly weighed to their trustworthiness. I believe that the social worker specifically testified that he spoke personally with the children and obtained the statements contained in the social study, and that that interview took place in a relatively short period of time after the incident, and that the social worker in his professional opinion believed that the minors were telling the truth at that time.
"I have taken that into consideration and balance that against the statements of Joseph in chambers, but he did not remember the incident and . . . he wanted to go home.
"Taking all of that into consideration, it is the court's opinion that this situation constitutes an ongoing course of conduct between the parents which involves knifes [sic], some blood, some constant involvement with domestic violence, and that as a result of that chronic behavior, the needs of the minors preclude physical care and continue to go unmet. I think that because of that effect on the minors that the petition can be sustained as to the risk of serious physical harm and illness as a result of the violent confrontations and the general lifestyle that promotes those confrontations that exist in the home, and I will find by clear and convincing evidence that the allegations of the petition filed in the matter are true." At that point, the parties agreed to proceed with the dispositional hearing and after further argument by counsel, the trial court adopted the recommendations set forth in the social study report of November 28, 1990.[4] The trial court removed custody of the minors from Marianne and Basilio pursuant to section 361, subdivision (b), and Civil Code section 4600 The trial court continued placement of the minors with the maternal grandmother and also made the following comment:
"Since the parents have not availed themselves to date of counseling which would put the court in a position to have the new position to change prior orders, I feel I don't have grounds to change prior orders, but I would encourage the parents to get in your programs as quickly as possible so the *Page 164 
court will have some input from professionals and that so we can make another determination at a future date hopefully to return the minors to the care of the parents."
Counsel for Marianne objected to the portion of the reunification plan concerning substance abuse. The court asked the social worker for an explanation and he responded that he had initially requested a substance abuse component because he was concerned that Marianne's behavior and some of her comments regarding an invention she anticipated would bring her billions of dollars were drug induced. Counsel for Marianne then made an offer of proof that Marianne and Basilio had obtained a patent for a cold sore remedy and were in the process of attempting to market it; therefore, Marianne's comments were not "some wild fantasy . . . that has no basis in reality." Nonetheless, the trial court ordered the substance abuse component to remain as part of the reunification plan.
 DISCUSSION I
Basilio contends the trial court committed prejudicial error in failing to strike Basilio Jr.'s statements from the social study report.
(1) In In re Malinda S. (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787
[795 P.2d 1244], our Supreme Court held a juvenile court may rely on a social study report[5] in determining whether a minor falls within its jurisdiction under section 300 Even though social study reports typically contain hearsay and multiple hearsay, the Supreme Court reached it conclusion in Malinda S.
in large part through a statutory construction analysis that *Page 165 
establishes a hearsay exception for social studies. (51 Cal.3d at pp. 376-382.)[6] The Malinda S. court found the Legislature intended social study reports to constitute competent evidence to support a jurisdictional determination. (Id. at p. 379.) In so doing, the Malinda S. court resolved a dispute among Courts of Appeal over whether social study reports were admissible at jurisdictional hearings. (See In re Jose M. (1988)206 Cal.App.3d 1098 [254 Cal.Rptr. 364] [social study report admissible over hearsay objection] and In re Donald R. (1987)195 Cal.App.3d 703, 715 [240 Cal.Rptr. 821], disapproved inMalinda S., supra, 51 Cal.3d at p. 385, fn. 22, [hearsay in social study report must be disregarded].) In reaching its conclusion that social study reports constitute an exception to the hearsay rule and constitute competent evidence for purposes of section 300 jurisdictional hearings, the Malinda S. court, nonetheless, recognized the juvenile court does not have "`carte blanche to accept it in lieu of all other evidence'" and the parties have the right to challenge the contents of the social study report. (51 Cal.3d at p. 382, fn. 13.)
There appears to be little authority on the issue presented here, namely, whether the hearsay statements of an incompetent declarant are admissible. Indeed, in the original edition to his hornbook on evidence, Professor McCormick stated:
"The application of the standards of competency of witnesses to declarants whose statements are offered in evidence under the various hearsay exceptions has never been worked out comprehensively by the courts. . . ." (McCormick, Evidence (1st ed. 1954) § 240, p. 505.) *Page 166 
Under modern California law, generally every person is qualified to be a witness, regardless of his or her age, provided he or she is competent to testify. (Evid. Code, § 700; Adamson
v. Department of Social Services (1988) 207 Cal.App.3d 14, 20 [254 Cal.Rptr. 667].) A witness is not competent to testify if he or she is incapable of expressing himself or herself concerning the matter to be understood or if he or she is incapable of understanding a witness's duty to testify truthfully. (Evid. Code, § 701; Adamson, supra, 207 Cal.App.3d at p. 20.) (2) A trial court's determination concerning a witness's competency will not be reversed on appeal absent an abuse of discretion. (In re Crystal J. (1990) 218 Cal.App.3d 596, 601 [267 Cal.Rptr. 105] .) We discern no abuse of discretion in the finding that Basilio Jr. was not competent to testify.
(3a) Here, Marianne and Basilio challenged the portion of the social study report dealing with the social worker's interview of Basilio Jr. on the basis that the trial court had determined Basilio Jr. was not competent to testify because he did not have the ability to distinguish between truth and falsity. (See Evid. Code, § 701, subd. (a)(2).) This was a legitimate challenge and should have precluded any use by the trial court of hearsay statements made by Basilio Jr. to the social worker that were contained in the social study report. This is so even though under Malinda S., supra, 51 Cal.3d 368, the report itself was admissible as well as the other hearsay contained in the report.
In reaching this conclusion we apply the general rule that if a declarant would have been disqualified to take the stand by reason of infancy or insanity his or her extrajudicial statements must also be inadmissible. (See The People v. VincenteSanchez (1864) 24 Cal. 17, 26, a case involving the hearsay exception of dying declaration ["As to their admissibility, the declaration of deceased persons . . . stand upon the same footing as the testimony of a witness sworn in the case, and are governed by the same rules . . . ."].) A foremost authority on the rules of evidence summarized the applicable law as follows:
"The hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed thequalifications of a witness . . . in regard to knowledge and the like. These qualifications are fundamental as rules of relevancy. Thus these extrajudicial statements may be inadmissible because of their failure to fulfill the ordinary rules about qualifications, even though they meet the requirements of a hearsay exception." (5 Wigmore, Evidence (Chadbourne rev. 1974) § 1424 at p. 255, fn. omitted, italics in original.) (4) The only *Page 167 
recognized exceptions to the rule that a hearsay declarant must be competent when an out-of-court statement is made are the excited utterance exception and the exception for fresh complaint of rape. (See Meyers, The Testimonial Competence of Children
(1986-1987) 25 J. Fam. L. 287, 336-337, and cases cited therein.) This case does not fall within either of these exceptions.
We also have considered the special problems surrounding the competency of young children witnesses. (5) To be competent to testify, a child must understand the difference between truth and falsehood.[7] Here, the trial court's determination that Basilio Jr. was not competent to testify at trial is not being questioned. Rather, the key issue here is whether Basilio Jr. was competent at the time he made the statements contained in the social study report. "The time of utterance of the testimony is ordinarily the time when the qualifications must exist, because (save for the capacity to observe, which is needed earlier . . .) it is at that time that they are needed." (2 Wigmore, op. cit.supra, § 483, p. 641, italics in original.) Thus, the nature of the particular competency qualification that is lacking becomes crucial. A child's various qualifications may very well be a function of age. For example, a child lacking a certain qualification, such as ability to communicate, may obtain that qualification at a later date. On the other hand, a child, who had the requisite qualifications to be competent as a witness at the time of the initial testimony or hearsay declaration, may later lose his or her testimonial capacity because of some physical trauma that renders the child unable to communicate and therefore incompetent to testify at the later date. We deem Basilio Jr.'s incompetency at trial also to have existed at the time he uttered the statements to the social worker four months earlier because of the nature of the particular competency qualification at issue. Absent a showing otherwise, a young child who is unable to differentiate between truth and falsehood at trial would not have possessed that qualification at an earlier point in time.
(3b) Thus, the trial court, having determined Basilio Jr. was incompetent on this basis, erred in refusing to strike his comments from the social study report and in ruling that it would determine what weight, if any, to give his comments as a separate issue. The trial court should have totally disregarded Basilio Jr.'s comments once it determined he lacked a competency qualification that was applicable to him at the time of trial as well as when he made the statements contained in the social study report. The particular nature of Basilio Jr.'s incompetency as a witness rendered that portion of the social *Page 168 
study report inadmissible. The trial court's ruling was akin to treating his incompetency as a matter of the weight of the evidence rather than as the threshold issue of admissibility of the evidence that it was in this case.
Having determined it was error to consider Basilio Jr.'s comments contained in the social study report in any fashion, the question remains whether it was prejudicial. Initially, we note that it is not entirely clear to what extent, if any, the trial court relied on Basilio Jr.'s comments. The only possible reliance was the court's reference to blood being involved in the fighting between Marianne and Basilio. Basilio Jr. told the social worker he saw blood during a fight between his parents. However, Basilio admitted in his testimony that one fight did involve blood, albeit inadvertently. Thus, even the trial court's reference to blood was not dependent on Basilio Jr.'s interview with the social worker. As will be seen in part II of this opinion, ample independent admissible evidence was presented at the hearing to support the jurisdictional finding of dependency. We conclude the error in not rejecting outright Basilio Jr.'s comments to the social worker was harmless here.
 II (6a) Basilio and Marianne contend there was insufficient evidence to support the jurisdictional finding under section300, subdivision (b), which requires the "minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor. . . ." (§ 300, subd. (b).) Specifically, the parents argue there was no evidence that the minors had suffered physical harm, and, therefore, the only issue is whether there was sufficient evidence for the trial court to draw an inference that the minors were at substantial risk of being seriously harmed.
The standard of proof required in a section 300 dependency hearing is the preponderance of evidence. (See § 355.)
(7) "If there is any substantial evidence to support the findings of the juvenile court, a reviewing court must uphold the trial court's findings. All reasonable inferences must be in support of the findings and the record must be viewed in the light most favorable to the juvenile court's order. [Citation.]" (In re Jeannette S. (1979) 94 Cal.App.3d 52, 58 [156 Cal.Rptr. 262] .)
(6b) Here, in addition to the two incidents of domestic violence reported to the police (Sept. 6, 1990, and Oct. 16, 1990), there is a pattern of *Page 169 
recurring violence in Marianne and Basilio's household. The social study report relates a history of confrontations between Marianne and Basilio, some of which were violent and which apparently involved the minors. Although these past occurrences are not described in great detail, they are sufficient to show a pattern of violent behavior that has not been corrected; hence, we cannot subscribe to the parents' argument on appeal that the September 6, 1990, and October 16, 1990, incidents were isolated ones. Although the evidence is by no means overwhelming, given the deference we must accord a juvenile court's factual findings (In re Anne P. (1988) 199 Cal.App.3d 183, 199 [244 Cal.Rptr. 490] ), we conclude there is substantial evidence to support the jurisdictional findings. Given the nature of the home environment, it was reasonable to infer the children were at substantial risk of serious physical harm to support the trial court's order that Basilio Jr. and Joseph be declared dependent children of the court.
 III
Marianne contends there was insufficient evidence to support the trial court's dispositional order removing the minors from parental custody. The contention has merit.
(8) We begin by noting that in dependency proceedings the burden of proof is substantially greater at the dispositional phase than it is at the jurisdictional phase if the minor is to be removed from his or her home. (In re Cheryl H. (1984)153 Cal.App.3d 1098, 1111-1113 [200 Cal.Rptr. 789] [burden of proof in jurisdictional phase is preponderance of the evidence; burden of proof in dispositional phase is clear and convincing evidence when court awards custody to a nonparent]; see also §§ 355, 361, subd. (b).)
This heightened burden of proof is appropriate in light of the constitutionally protected rights of parents to the care, custody and management of the children. (See Santosky v. Kramer
(1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 606, 102 S.Ct. 1388].)
"`Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood.' [Citation.] `In furtherance of these principles, the courts have imposed a standard of clearand convincing proof of parental inability to provide proper care for the child and resulting detriment to the child if it remains with the parent, before custody can be awarded to a nonparent.' [Citation.]" (In re James T. (1987) 190 Cal.App.3d 58, 64 [235 Cal.Rptr. 127], original italics.)
Furthermore, section 361, which sets forth the limitations and guidelines for removing a minor from the physical custody of his parents, provides in pertinent part: *Page 170 
"(a) In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations. . . . The limitations shall not exceed those necessary to protect the children.
"(b) No dependent child shall be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence of any of the following:
"(1) There is a substantial danger to the physical health of the minor or would be if the minor was returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the custody of the parent or guardian with whom the minor resided at the time of the injury.
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(c) The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home. . . . The court shall state the facts on which the decision to remove the minor is based."
Of course, on appeal, the substantial evidence test is the appropriate standard of review. Thus, in assessing this assignment of error, "the substantial evidence test applies to determine the existence of the clear and convincing standard of proof. . . ." (In re Amos L. (1981) 124 Cal.App.3d 1031, 1038 [177 Cal.Rptr. 783].)
(9) (See fn. 8.), (10) To substantiate a finding of "substantial danger to the physical health of the minor" under section 361, subdivision (b)(1),[8] DSS relies essentially on the following evidence: the September 6, 1990, and October 16, 1990, incidents; the couple's previous history of involvement with child protective services and violence; reports by neighbors of Marianne screaming at the minors and hitting them; and the social worker's *Page 171 
interviews with the minors, who said they observed Marianne and Basilio fighting. We have already remarked on the skimpy nature of the information in the social study report concerning the couple's previous history of violence. We also note the reports by the complaining neighbors were at least double hearsay and contradicted by a live witness, whom the trial court explicitly found credible. While Basilio Jr. was found not qualified to testify, Joseph basically recanted much of what he told the social worker. That leaves the two incidents of domestic violence in which the police were called. While these incidents presumably occurred in or near the minors' presence, it is significant that neither incident directly affected either minor physically, i.e., the adults were fighting with each other and not directing their anger at the minors or abusing them. In fact, no evidence whatsoever was presented that the minors were harmed physically during the incidents that led to this proceeding. In sum, we find there was not substantial evidence to uphold a finding under section 361, subdivision (b)(1), under the requisite clear and convincing standard.
In In re James T., supra, 190 Cal.App.3d 58, 65, the Court of Appeal noted that under section 361 a minor can be removed from a parent's custody only in extreme cases of parental abuse or neglect. This is simply not such an extreme case to warrant removal. (Compare In re Van Vlack (1947) 81 Cal.App.2d 838
[185 P.2d 346]; In re Tracy Z. (1987) 195 Cal.App.3d 107
[240 Cal.Rptr. 445]; In re Jason L. (1990) 222 Cal.App.3d 1206
[272 Cal.Rptr. 316].) As the court in In re James T., supra,
190 Cal.App.3d at page 66, observed:
"The language of section 361 is both clear and specific. In Welfare and Institutions Code section 300
proceedings a child is not to be removed from its parents unless there is clear and convincing evidence of one of the enumerated extreme cases. . . . Section 361 embodies legislative solicitude for parental rights."
Moreover, the trial court failed to consider less drastic measures than removal from parental custody. Section 361, subdivision (c), requires the trial court to (1) determine if reasonable efforts had been made to prevent or eliminate the need for removing the minor from his or her home and (2) to state on the record the facts that led the court to order removal. Although the trial court explicitly found reasonable efforts had been made to prevent removal, the court did not state the factual basis for removing the minors. Failure to make the required findings under section 361 is error. (In re Jason L., supra,
222 Cal.App.3d at p. 1218.) Here, the error cannot be deemed harmless because there were less drastic alternatives to removal. As we have already observed, this is not an extreme case of parental abuse or neglect, *Page 172 
and the minors were not physically harmed; therefore, the minors could have been returned to the parents under strict supervision. (See § 362; In re Jeannette S., supra, 94 Cal.App.3d at pp. 60-61.) It appears the decision to remove the minors was based in part on the trial court's conclusion that the parents had not participated in counseling and programs recommended by the social worker. Although the parents were not in counseling at the time of the dispositional hearing, the full record does not completely support the conclusion of nonparticipation. While the record indicates an absolute unwillingness to participate in drug testing (see discussion, post), the level of cooperation with other components of the reunification plan is not clear. At the readiness hearing, it was reported the parents were active in seeking couples counseling and in-home supportive services and had been assigned a counselor by New Alternatives. A report prepared by the social worker states: "I commend them for their efforts in this area." Counsel for Marianne explicitly stated his client's willingness to "[do] whatever the court feels is appropriate in terms of family counseling."
 IV (11) Finally, Marianne and Basilio attack the reunification plan for including a substance abuse component in the absence of any evidence that they have a substance abuse problem. The contention has merit.
A reunification plan "`must be appropriate for each family and be based on the unique facts relating to that family.'" (In reMichael S. (1987) 188 Cal.App.3d 1448, 1458 [234 Cal.Rptr. 84].) Section 362, subdivision (c), states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section300"
Other than the social worker's observation that Marianne behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention, there was nothing in the record to indicate either Marianne or Basilio had a substance abuse problem. Given the offer of proof by Marianne's counsel that there was indeed an invention that had a potential money-making aspect, the only remaining factor supporting the substance abuse component was Marianne's behavior. On this record, Marianne's behavior, by itself, cannot support a conclusion she had a substance abuse *Page 173 
problem. Similarly, there is nothing in this record to indicate that a substance abuse problem led to the conditions that caused the dependency.[9]
 DISPOSITION
The judgment is reversed as to the dispositional order removing the physical custody of Basilio Jr. and Joseph from Marianne and Basilio and including a substance abuse component in the reunification plan. The trial court is directed to conduct another dispositional hearing in accordance with the principles expressed in this opinion. In all other respects, the judgment is affirmed.
Benke, J., and Nares, J., concurred.
A petition for a rehearing was denied March 27, 1992, and respondent's petition for review by the Supreme Court was denied June 25, 1992.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] On October 23, 1990, the minors were detained with their maternal grandmother.
[3] The social study included, among other things, a history of the couple's past involvement with child pretective services as well as their interaction with law enforcement. Of particular note is the reference to 12 prior referrals regarding the minors, who had previously been made dependents of the juvenile court because of violent confrontations and neglect issues, according to the report. The social study also stated that Marianne had been placed on probation in 1987 for three years for childbeating.
[4] The proposed reunification plan attached to the November 28, 1990, social study report included the following requirements: completion of a parenting class; completion of an approved therapy program; abstinence from alcohol and drugs; and substance abuse testing.
[5] Social study reports are written reports furnished by probation officers or social workers upon court order in any matter involving the custody, status, or welfare of a minor. (§§ 272, 281.) The reports must include the writer's investigation of appropriate facts and a recommendation to the court. (§ 281.) The probation officer or social worker must interview any minor age four years or older who is a subject of such an investigation, and shall include the substance of the interview in any written report submitted at an adjudicatory hearing. (§ 328.) A social study is admissible for purposes of "providing the court with a coherent picture of the child's situation." (In re Rose G.
(1976) 57 Cal.App.3d 406, 426 [129 Cal.Rptr. 338], rejected on other grounds by this court in In re Cynthia K. (1977)75 Cal.App.3d 81, 85 [141 Cal.Rptr. 875].) In a section300 hearing, "the jurisdictional fact is the lack of parental control and the unfitness of the minor's home. The social study report is directly relevant to the issue to be determined by the juvenile court at the adjudication hearing." (In re Biggs (1971)17 Cal.App.3d 337, 345 [94 Cal.Rptr. 519].)
[6] The two major statutes the Malinda S. court analyzed were sections 281 and 355, along with California Rules of Court, rule 1450(c).
Section 281 provides: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter."
Section 355 provides: "At the jurisdictional hearing, the court shall first consider only the question whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him or her within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 If the parent or guardian is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."
California Rules of Court, rule 1450(c) provides: "A social worker's report that contains information relevant to the jurisdiction hearing shall be admissible if, on request of the parent or guardian, the probation officer or social worker is made available to be cross-examined on the contents of the report."
[7] In addition to an awareness of the difference between truth and falsehood, other prerequisites for competency as a child witness are the capacity to observe, sufficient intelligence, adequate memory, the ability to communicate, and an appreciation of the obligation to speak the truth. (Meyers, op. cit. supra,
at p. 288.)
[8] Basilio assigns error to the trial court's failure to specify upon which paragraph of section 361, subdivision (b), it was relying. Any such error would be harmless since it is clear from the petition and the entire record that the trial court relied upon paragraph (1).
[9] If, during the pendency of the case, evidence of a substance abuse problem arises justifying the inclusion of such a component in the reunification plan, the trial court can modify the reunification plan accordingly and order additional services. (§ 366.21, subd. (e).) *Page 174