Filed 2/11/15  In re I.R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re I.R., a Person Coming Under the Juvenile Court Law. | B256667 (Los Angeles County Super. Ct. No. DK02968) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. WILLIE R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Tony L. Richardson, Judge.  Affirmed in part and reversed in part.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Willie R. (Father) appeals from the juvenile court's May 12, 2014 dispositional order made after I.R. (born in 2010) was adjudged a dependent of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (g) (no provision for support).[1]  Father contends the court abused its discretion in ordering Father to participate in drug and alcohol testing, arguing the order was not reasonable and was not designed to eliminate the conditions that led to the court adjudging I.R. a dependent of the court.  The Department of Children and Family Services (DCFS) concedes there was no evidence linking Father's falling asleep while caring for I.R. to substance abuse and agrees with Father that the order for testing does not purport to eliminate any condition that led to I.R.'s removal.  DCFS also agrees that reversal of the court's order is required.[2]  We conclude the court abused its discretion in ordering Father to participate in drug and alcohol testing and reverse that portion of the dispositional order.  In all other respects, the dispositional order is affirmed.[3]

## BACKGROUND

**The section 300, subdivisions (b) and (g) petition**

DCFS filed a section 300 petition on behalf of I.R. on January 8, 2014, and a first amended petition on January 31, 2014.  In a jurisdictional hearing that commenced on May 8, 2014, and concluded on May 12, 2014, the juvenile court sustained paragraph b-1 of the section 300 petition, which alleged that in January 2014 Mother was incarcerated and had failed to make an appropriate plan for I.R.'s care.  Paragraph b-2 as sustained alleged Father repeatedly fell asleep at a hospital while I.R. was under his care and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Indeed, Father and DCFS have "stipulated" to such a "limited reversal."  Father and DCFS assert that our review is not necessary in light of that stipulation.  We respect the courtesy, but conclude that the parties have not made the requisite showing under Code of Civil Procedure section 128, subdivision (a)(8) that would allow us to reverse an order of the juvenile court without our independent review.

[3] We dismissed Robbie B.'s (Mother) appeal as abandoned on January 26, 2015. (See *In re Phoenix H.* (2009) 47 Cal.4th 835, 838; *In re Sade C.* (1996) 13 Cal.4th 952, 994.)

supervision. Paragraph b-3 as sustained alleged Mother and Father neglected I.R.'s dental and medical health, and I.R. had four rotted front teeth that required extraction and had severe speech and motor delays. Paragraph g-1, regarding Mother's failure to make an "appropriate plan" for I.R.'s care while she was incarcerated, was also sustained.

**Events leading up to the jurisdictional and dispositional hearing**

We focus only on the facts that are necessary and pertinent to this appeal, which concerns only the allegation of paragraph b-2 of the section 300 petition that Father repeatedly fell asleep at a hospital while I.R. was under his care and supervision.

On January 3, 2014, DCFS received a referral alleging caretaker absence and general neglect of I.R. by Mother and Father. On that day, Father had brought Mother to a hospital emergency room. Mother was examined and found to have eight blood clots in her arms and was subsequently hospitalized. Father was observed to repeatedly fall asleep while I.R. was in his care. When he was interviewed by DCFS later that day, Father stated his brother was in a gang but that he was not. He also said the family was residing with maternal aunt, who did not like him. Father did not provide an address. During the interview, Father kept nodding off. Father denied he had a medical condition or was under the influence of drugs, claiming he kept falling asleep because he had been awake for four days taking care of Mother. In a later interview, Mother denied that she or Father used drugs.

At the hearing on January 8, 2014, to determine whether I.R. should be detained from the care of Mother and Father, Father stated he did not do drugs and was willing to submit to drug testing, including providing hair samples. The juvenile court detained I.R. from the care of Mother and Father. DCFS recommended the juvenile court order Father to undergo a psychological evaluation and participate in random drug testing on the basis of Father's falling asleep while DCFS and others attempted to speak to him.

At the time DCFS made its report to the juvenile court for the jurisdictional hearing, an investigation regarding Father's criminal history was pending.

3

**The jurisdictional and dispositional hearing**

At the adjudication hearing which commenced on May 8, 2014, Toni Giuliano, a DCFS investigator, testified, "As far as the father, we never had a definitive answer about what was going on that evening and why he was unable to supervise the child." She thought Father should have been able to carry on a conversation, even if he was fatigued. She stated that when Mother had been hospitalized previously at a different hospital, Father had not fallen asleep, and no mention had been made about Father being under the influence. Giuliano testified, "We suspect that the father may have been under the influence that evening that [I.R.] was detained, so therefore, that is why we requested" drug testing for Father. She admitted the petition did not allege Father's drug use "Because I didn't have any concrete evidence that he was under the influence." The investigator had not made any prearranged or unannounced visits to Mother and Father's home. She also stated she had not had much contact with Father because he quickly handed the telephone to Mother during any telephone conversation.

Mother testified that Father had been nodding off on January 8, 2014, because he had been assisting her the previous four days at a hospital in Glendale, where she had been treated for rheumatoid arthritis. She stated he had helped her with the bed pan, massaged her legs, and gone out to get food for her.

In closing argument, DCFS argued that the section 300, paragraph b-2 allegation against Father be sustained, claiming the statements Father made when he woke up were incoherent. I.R. argued that the allegation against Father be sustained because I.R. had been placed at risk when she wandered off in a hospital where she was exposed to infectious diseases. Father argued that the allegation in paragraph b-2 be dismissed, claiming there was no nexus between Father's falling asleep and serious physical harm to I.R. Mother joined in Father's argument regarding the paragraph b-2 allegation.

On May 12, 2014, the juvenile court sustained the section 300, paragraph b-2 allegation, stating, "Based on the evidence before me and the testimony as well, for jurisdictional purposes it does appear to me based on the b-2 count that Father was

4

incapable of taking care of his child as detailed in the b-2 count when Mother was hospitalized." At disposition, the court ordered Father to participate in the "services which are reflected in the respective court-ordered case [plan]." The case plan ordered Father to submit to random or on demand drug and alcohol testing every other week. Father appealed.

## DISCUSSION

**The juvenile court abused its discretion in ordering Father to submit to random drug and alcohol tests**

Family reunification services are provided to parents of dependent children to enable them to demonstrate parental fitness and regain custody. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 (*Nolan*).) The juvenile court is required to order child welfare services for the parents and the child after the child has been removed from parental custody. (*Ibid.*; § 361.5.) Section 358, subdivision (b) provides that prior to making a dispositional order, the court shall consider the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence. The court may order the parent to participate in a counseling or education program, including parent education and parenting programs. (§ 362, subd. (c).)[4]

Section 362, former subdivision (c), now subdivision (d), provides that the juvenile court's orders must be "'reasonable'" and "'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.'" (*Nolan*, *supra*, 45 Cal.4th at p. 1229.) The court has broad, but not unfettered, discretion in fashioning reunification orders. (*Ibid.*) The reunification plan must be appropriate for each family. (*Ibid.*)

*In re Basilio T.* (1992) 4 Cal.App.4th 155 (*Basilio*), superseded by statute on other grounds as noted in *In re Lucero L.* (2000) 22 Cal.4th 1227, 1239–1242, is instructive. In

---

[4] The text of section 362, subdivision (c) was later moved to section 362, subdivision (d). (Stats. 2012, ch. 130, § 1.)

5

that case, the minors were adjudged dependents of the court pursuant to section 300, subdivision (b) based on the parents' history of domestic violence. (*Basilio*, at p. 163.) The juvenile court ordered the parents to participate in substance abuse programs and testing. Division One of the Fourth Appellate District determined the juvenile court had abused its discretion in ordering a substance abuse component as part of the reunification plan because other than the observation by DCFS that the mother had "behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention, there was nothing in the record to indicate either [the mother or the father] had a substance abuse problem." (*Id.* at pp. 172–173.) On the other hand, the mother's counsel had made an offer of proof that the parents had obtained a patent for a cold sore remedy and were in the process of attempting to market it. (*Id.* at pp. 164, 172.) Concluding that the mother's behavior alone could not support a conclusion that she had a substance abuse problem and there was nothing to indicate a substance abuse problem led to the conditions that caused the dependency, the appellate court reversed the dispositional order. (*Id.* at p. 173.)

We conclude that to the extent the juvenile court ordered drug and alcohol testing, that portion of the dispositional order was not reasonable and was not designed to eliminate the conditions that led to the court's adjudging I.R. a dependent of the court. Other than falling asleep repeatedly while DCFS and others were attempting to interview him at the hospital, Father did not display any indications of substance abuse. Both Mother and Father explained his fatigue by stating that Father had been awake for the past four days when he took care of Mother at another hospital. Mother and Father denied he had a medical condition or was under the influence of drugs.

Nor did DCFS establish that Father had a drug or alcohol problem. At the adjudication hearing, Giuliano admitted a drug allegation was not included in the petition because she did not have any "concrete evidence" that Father was under the influence at the hospital. She also stated DCFS had never determined why Father had been unable to supervise I.R. She testified DCFS requested drug testing because "we suspect" that

Father may have been under the influence.  As stated, Mother and Father had denied Father's drug or alcohol use.  Further, at the time of the adjudication hearing, there was no evidence of criminal history, including narcotics activity, on the part of Father. Additionally, DCFS had not made any prearranged or unannounced visits to Mother and Father's home to determine if there was any substance abuse.  Giuliano stated she had very limited telephonic contact with Father.  Accordingly, we conclude there was nothing in the record to indicate that a substance abuse problem led to the conditions that caused the dependency.

## DISPOSITION

That portion of the May 12, 2014 dispositional order requiring Father to comply with the case plan regarding drug and alcohol testing is reversed.  In all other respects, the May 12, 2014 dispositional order is affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7