Filed 11/1/21  In re L.A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re L.A., et al., Persons Coming Under the Juvenile Court Law, | B310329<br>(Los Angeles County<br>Super. Ct. No. 20CCJP04574) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent<br><br>v.<br><br>R.A.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Judge Pro Tempore.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

R.A. (Mother) challenges the case plan the juvenile court ordered for her in dependency proceedings regarding her three adopted children.  We conclude the court did not abuse its discretion by requiring R.A. to participate in both individual and anger management counseling.  Accordingly, we affirm.

## BACKGROUND

In 2014, Mother and her husband[1] adopted L.A. (born 2004), J.A. (born 2005), and A.A. (born 2009) following dependency proceedings and failed reunification efforts with the children's biological parents.  Mother is the children's biological great aunt.

In August 2020, the Los Angeles Department of Children and Family Services (DCFS) received two referrals regarding then-16-year-old L.A.  The first referral alleged that Mother searched for a cell phone Mother believed L.A. was hiding by putting her hands in L.A.'s underwear and putting her fingers in L.A.'s vagina.  It further alleged that when Mother eventually found the phone, she grabbed L.A.'s hair, threw her to the floor, and permitted Mother's adult son to kick L.A. in the back. Following the incident, L.A. ran away to her uncle's home in San Diego.

The second referral alleged that L.A. feared for her safety after returning to Mother's home and was contemplating running away again.  It further alleged that Mother had been coaching L.A. and her siblings not to tell anyone, especially social workers and police, about what was going on in the home.

---

[1] Mother's husband is not a party to this appeal.

2

In August 2020, DCFS initiated dependency proceedings by filing a Welfare and Institutions Code section 300[2] petition alleging that Mother had been physically abusing the children for years.  Specifically, the petition alleged the events reflected in the first referral, as well as that Mother regularly abused L.A. "by striking the child's face, grabbing the child by the hair and dragging the child by her hair on to the floor[,]" that Mother "struck the child's face and caused the child to sleep on the floor without a blanket[,]" and that Mother had on numerous occasions "pulled the child's hair, struck the child's arms, legs and feet with objects including spoons, a pan and a broom" and "forced the children to kneel for extended periods of times, up to six hours." The petition alleged Mother similarly abused L.A.'s siblings, J.A. and A.A., on a regular basis.  Mother submitted to DCFS's recommendation that the children be detained from her (and her husband's) care.

At the combined jurisdiction/disposition hearing, the court sustained the petition.  Neither Mother nor any other party has challenged the court's jurisdictional findings, and DCFS presented extensive evidence at the hearing to support those findings.  This evidence included consistent reports from all three children that Mother's physical abuse had been regular and ongoing for years.  The children were initially hesitant to speak with DCFS about Mother's abuse, and only shared it when interviewed in private, explaining that they feared retaliation by Mother.  In addition, Mother told J.A. that, if he reported what

---

[2] All further statutory references and citations are to the Welfare and Institutions Code.

was happening, he and his siblings would be placed in separate foster homes.

Mother's physical abuse sometimes left injuries on the children, such as bruises or welts on their heads where Mother struck them with a pan or a broomstick, and bleeding scabs on J.A.'s ears from Mother pulling on them. As to the incident of Mother inappropriately touching L.A.'s vagina and breasts, several witnesses described how Mother, in an effort to find and retrieve a cell phone from L.A., placed her hands under L.A.'s clothing and ultimately placed her fingers in L.A.'s vagina and "continued moving her hand in and around the child's vaginal area," all while yelling and cursing at L.A. L.A. repeatedly asked Mother to stop and tried to move away during this incident, but Mother "forcibly held [L.A.]"

In addition to evidence of physical abuse, DCFS presented extensive evidence of Mother degrading and being cruel to the children in various ways. For example, when L.A. was crying after the incident during which Mother inappropriately touched L.A.'s vaginal area, Mother ridiculed her for crying and took photographs of L.A. in distress. Mother regularly told all three children she had never wanted to adopt them, excluded them from family events, called them names and yelled at them, blamed and punished them for things Mother's biological children had done, and told them they were only part of the family as a source of income. On one occasion, when Mother believed the children had eaten some candy, Mother instructed J.A. to lie down on the kitchen floor while Mother was holding a knife and told him she was going to cut him open to retrieve the candy. On this same occasion, Mother ran a knife along A.A.'s chest and

stomach and poked A.A. with the knife while making similar threats.

During interviews and in her testimony (which the juvenile court expressly found was not credible), Mother consistently denied all allegations against her—and any form of corporal punishment whatsoever—claiming that maternal relatives had conspired with the children to falsely accuse her of abuse, and that L.A.'s "behavioral problems" were the source of the family's dysfunction. Nevertheless, as noted, Mother has not challenged the court's jurisdictional findings based on physical abuse.

At disposition, the juvenile court declared the children dependents of the court, removed them from Mother, and ordered Mother to participate in family reunification services. These included parenting classes, individual counseling, anger management counseling, and conjoint counseling with the children. The court denied Mother's request that she be allowed to participate in either individual counseling or anger management counseling instead of both. The court explained that the nature of the abuse—including specifically, "[t]he use of implements to strike children and leave marks on children's bodies on a regular and ongoing basis, [and] the use of physical punishment by having children kneel outside on hard surfaces such as cement or patio floors for extended periods of time"—indicated Mother had anger management issues "towards these children" that could not be addressed with individual counseling alone.

Mother filed a timely notice of appeal challenging the court's jurisdictional and dispositional orders.

# DISCUSSION

On appeal, Mother challenges only the case plan contained in the dispositional orders.  "We review the juvenile court's disposition case plan for an abuse of discretion."  (See *In re I.R.* (2021) 61 Cal.App.5th 510, 522.)  Mother contends the court abused its discretion by ordering her to participate in both anger management and individual counseling, because the orders were "overly burdensome and contrary to her family's needs."  We disagree and affirm.

Section 362, subdivision (d) authorizes the juvenile court to "direct any reasonable orders to the parents" of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child, including orders containing "a direction to participate in a counseling or education program," provided that the "program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."  (§ 362, subd. (d).)  Thus, although section 362 grants juvenile courts broad discretion to fashion family case plan orders, such orders must be both "reasonable" and tailored to addressing the issues leading to juvenile court jurisdiction.  (*Ibid.*; see *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.)  A case plan " ' "must be appropriate for each family and be based on the unique facts relating to that family." ' "  (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 172, superseded by statute on another point in *In re Lucero L.* (2000) 22 Cal.4th 1227, 1239−1242.)

Mother contends that requiring her to participate in anger management counseling was "not [a requirement] designed to

6

eliminate those conditions that led to the court's jurisdiction" (boldface omitted), because the abuse leading to juvenile court jurisdiction "did not appear to be fueled by uncontrollable anger, but rather, was the result of poor parenting skills that appeared to have gone on for too long. . . . While appellant was likely often angry when enacting poor parenting decisions, anger issues were not a condition that led to dependency jurisdiction in this case." Mother offers no basis for this characterization of the record, with which we disagree. The record evidences consistent acts of physical abuse, the violent and cruel nature of which alone provides a basis on which the court reasonably could have concluded that these acts were at least in part the result of Mother's inability to manage her anger towards the children. Further supporting this conclusion is evidence that Mother constantly yelled at the children and called them names.

Mother further argues that the case plan requirement that she participate in both anger management and counseling was "overly burdensome" because counseling alone would be "sufficient to assist [her] in eliminating the conditions that led to dependency jurisdiction." This argument fails for the reasons discussed above, as the court did not err in concluding individual counseling alone would be insufficient. Mother identifies no other reason why the court-ordered case plan was overly burdensome. In any event, although "[j]uvenile courts should be mindful of the burdens their disposition orders impose on parents already grappling with difficult conditions and circumstances[,] . . . the paramount concern always must be the child's best interests, and we cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its

requirements may seem from the parent's perspective." (*In re D.P.*, *supra*, 44 Cal.App.5th at pp. 1071–1072.)

The court acted within its discretion in ordering Mother participate in anger management in addition to individual counseling as part of her case plan.

## DISPOSITION

The court's dispositional orders are affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



CRANDALL, J.*

---

* Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8