Filed 5/20/26  In re A.B. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | C104709 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>F.J.,<br>        Defendant and Appellant. | (Super. Ct. No. JV2025-0136) |

Appellant, mother of minor A.B. (mother), appeals from the juvenile court's September 15, 2025 jurisdictional/dispositional order.  She contends the court abused its discretion in ordering substance abuse testing for her and in reducing her visitation with A.B.  We affirm.

BACKGROUND

On June 13, 2025, the Yolo County Health and Human Services Agency (the Agency) filed a dependency petition alleging that A.B. (then 23 months old) had suffered, or was at substantial risk of suffering serious physical harm that was:  (1) inflicted

1

nonaccidentally by a parent (Welf. & Inst. Code, § 300, subd. (a));[1] and (2) due to the inability of the parent to provide regular care due to the parent's mental illness, developmental disability, or substance abuse (§ 300, subd. (b)(1)). The petition alleged that on June 8, 2025, father shook, slammed, and punched the minor with a closed fist. Law enforcement responded to multiple witness calls regarding the incident and arrested father. The petition further alleged that mother failed to protect A.B. from the father. Mother denied that the incident could have happened, minimized father's behavior by stating her belief that father did not hit the minor " 'that hard,' " and reported that the child could be " 'out of control.' "

At the detention hearing, the juvenile court ordered A.B. detained from father and left in the care of mother.

According to the jurisdiction report, a social worker made an unannounced visit to mother on June 25, 2025. Mother reported she was getting ready to leave and denied access to the home. The social worker reviewed a safety plan with mother. The safety plan stated that mother would not allow father back into the home.

On July 15, 2025, the Agency filed an amended dependency petition. It alleged that: (1) on July 8, 2025, a neighbor informed the Agency that father was seen around mother's apartment complex more than twice; and (2) on July 12, 2025, during an unannounced home visit, father was observed exiting the family apartment through the back door. In its second detention report, the Agency reported that mother initially denied father being at the residence on July 12 but later admitted he had been there. A social worker reported the smell of marijuana in the residence and saw a tall, blackish colored water pipe inside on a coffee table. The social worker asked mother to find another location for the water pipe that was out of the child's reach.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

At a detention hearing on July 17, 2025, the juvenile court detained A.B. from mother and granted mother six hours of visitation per week.

In its combined jurisdiction and disposition report, the Agency discussed two visits that mother missed.  On July 23, 2025, mother contacted the visitation coach 30 minutes prior to the visit to report that she was having difficulty getting her son " 'up and moving.' "  Twenty minutes later, mother texted to say they were trying to get a rideshare.  Mother then texted asking if they could have a visit later that day but the visitation coach said it was not possible.  Mother called after the visit start time and said she was still at home.  Mother ultimately missed the visit.  The visitation coach reminded mother she also had a visit scheduled for the next day and suggested she reserve a rideshare for it.  The next day, shortly after the scheduled visit time, mother and father texted saying they did not have the money to get to the visit.  The visitation coach reported that on both days A.B. had been transported to the visit and then taken back once the visits were cancelled.  The report stated that "[g]iven the significant emotions and behaviors the minor presents with during visit transitions and the frequent no shows by the parents, the Agency respectfully requests visits be ordered at a minimum of three hours supervised per week."  The Agency provided mother with bus passes for the following week.  Mother denied having a substance abuse history but stated that she used marijuana at times.

The Agency filed an addendum report on September 11, 2025.  At a visit on July 30, 2025, when both parents were present, mother argued with father and continued to "be loud" after being told to stop.  Mother was told to put her cell phone away when she was looking at it.

At a visit on July 31, 2025, mother arrived 15 minutes late and had to be reminded throughout the visit to stay with A.B. and stay off her cell phone.

At a visit on August 7, 2025, mother argued throughout the visit with the visitation coach about various things, including mother being on her cell phone.

On August 13, 2025, mother missed the visit, claiming she could not find the bus passes. A.B. had again already been transported to the visit when mother and father informed the visitation coach that they would miss the visit. At a visit the next day, mother stated she had been out of town the previous day. When the visitation coach questioned mother about her previous claim that she missed the visit because she could not find the bus passes, mother changed the subject.

On August 20, 2025, father attended the visit alone, reporting that "mother was not allowed to join the visit because of what happened last week." Mother contacted father, and the visitation monitor could hear mother screaming even though the cell phone was not on speaker. The visitation coach advised the parents that the visit would be cancelled if arguing continued. It was ultimately confirmed that mother could attend the visit. Mother arrived with 16 minutes left of the visit; the visitation coach "detected a strong odor of marijuana" as mother walked in. Once the visit ended, mother continued to argue with father and yelled profanities at the visitation coach. Mother also shoved father in the chest with both hands. A.B. was upset after the visit. The visitation provider banned mother from returning to the property.

At the visit on August 28, 2025, it was reported that mother's voice was loud even when saying basic words. Mother's tone when speaking to A.B. was angry or aggressive. The visit monitor advised that if mother needed to be drug tested, perhaps after the visit would work because "mother seemed under the influence of a stimulant and was sweating, even inside in the air conditioning."

On September 3, 2025, the visitation team reported the following: " 'I do want to add that we have a lot of concerns about mom I am unsure if mom is under the influence or what is going on. Mom was on her phone and could not refrain from phone use, she was not being argumentative but she literally just could NOT be off her phone. Also there is a lot of aggressive talk and want [*sic*] one point she yanked the minor while the minor was sitting on a chair she aggressively pulled her down.' " (Italics omitted.)

4

At a visit on September 9, 2025, A.B. hit mother, and mother "screamed uncontrollably" in response.

The Agency again requested in its addendum report that given the significant emotions and behaviors A.B. presents during the visit transitions and the no shows by mother, that visits be ordered at a minimum of three hours per week. The Agency also submitted an amended case plan for mother that included a psychological evaluation and substance abuse testing when there is reasonable suspicion.

At the contested jurisdiction and disposition hearing on September 15, 2025, mother testified that she did not believe the visitation notes in the addendum report accurately reflected how her visits with A.B. went. Mother said that the visits were positive with her daughter, but that the visitation monitors "just see a negative side of me." The Agency argued for a psychological evaluation because it was "unclear whether mother's issues that have been observed are related to substance abuse or to a mental health issue." Mother requested that A.B. be returned to her and objected to the requested decrease in visitation and the inclusion of the psychological evaluation and drug testing in the case plan.

The juvenile court sustained the amended petition and took jurisdiction. It ordered substance abuse testing and a psychological evaluation for mother based on the concerns raised in the Agency reports, explaining that "there's some indications that, this may not be the case, but just objectively, it's a cool room but mom shows…the symptoms of someone who is under the influence of something and there may be quite a bit of just frustration, anxiety involved in the issue." The court reduced mother's visits to three hours per week "because it looks as if [A.B.] is really affected by what's going on at some of these visits. And so I really hope that these visits can be in a bit more calmer situation and they're consistently attended."

Mother timely appealed.

5

DISCUSSION

Mother argues the juvenile court abused its discretion by ordering mother to drug test and by reducing her visitation. We disagree.

Section 362, subdivision (d) authorizes a juvenile court to "direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section." " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.' " (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition." (*Ibid*.) At the same time, the court's "orders must be 'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' " (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.)

We review a juvenile court's dispositional case plan for abuse of discretion. (*In re M.C.* (2023) 88 Cal.App.5th 137, 155; see also *In re D.P.* (2020) 44 Cal.App.5th 1058, 1070 ["visitation orders will not be disturbed on appeal absent an abuse of discretion"].) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

The juvenile court did not abuse its discretion in ordering mother to drug test. Mother contends there was no factual basis for the order to participate in substance abuse testing. Not so. There was a documented concern, based on observations made during visits, that mother may be under the influence of a substance, given that she was sweating indoors even with air conditioning; could not refrain from cell phone use; and responded at times to visitation staff and A.B. in a manner that, even bearing in mind the stressful circumstances, was overly aggressive. These observations provided sufficient reason for

6

the court to include substance abuse testing in the case plan based upon a reasonable suspicion.

Mother notes there was no allegation of substance abuse by mother in the section 300 petition. But, as discussed, this was not required before the juvenile court could order substance abuse testing. (See *In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 [in fashioning dispositional orders, " '[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition' "]; see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 ["[W]hen the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan"; in fact "the court would have been remiss if it failed" to do so].)

In asserting her claim, mother relies on *In re Drake M.* (2012) 211 Cal.App.4th 754, *In re Sergio C.* (1999) 70 Cal.App.4th 957, and *In re Basilio T.* (1992) 4 Cal.App.4th 155, but these cases are distinguishable.

In *In re Drake M.*, the juvenile court ordered random drug testing for the father where the father "use[d] medical marijuana pursuant to a physician's recommendation." (*In re Drake M., supra*, 211 Cal.App.4th at pp. 769-770.) The appellate court reversed the testing order because there was "nothing in the record to indicate that he has a substance abuse problem." (*Id*. at pp. 770-771.) That is not the case here, as visitation staff documented their concerns about how mother's behavior may be the result of substance abuse.

In *In re Sergio C.*, the juvenile court ordered drug testing based solely on the unsworn and unconfirmed allegation by the mother that the father used drugs. (*In re Sergio C., supra*, 70 Cal.App.4th at p. 960.) The appellate court reversed the order, explaining that "we do not think that drug testing ought to be imposed based solely on the unsworn and uncorroborated allegation of an admitted drug addict who has abandoned her children." (*Ibid*.) Here, the evidence of possible substance abuse is not based on a

bare allegation by another parent but on the visitation staff's observations of mother during visits.

And in *In re Basilio T.*, the juvenile court ordered drug testing based on a "social worker's observation that [the mother] behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention." (*In re Basilio T., supra*, 4 Cal.App.4th at p. 172.) Because there was proof of "an invention that had a potential money-making aspect," the only factor supporting the drug testing order was a generalized concern over the mother's behavior, which was not described by the social worker. (*Ibid.*) The appellate court reversed the order because "[o]n this record, [the mother's] behavior, by itself, cannot support a conclusion she had a substance abuse problem." (*Id.* at pp. 172-173.) Unlike in *In re Basilio T.*, in the present case, the observations of mother and her behavior across numerous visits provide specific support for the drug testing order.

Mother also argues that the juvenile court abused its discretion in ordering a reduction of her visitation. We again disagree. Mother had missed three visits. For those visits, A.B. had been transported to the visit site unnecessarily, which was a concern given "the significant emotions and behaviors the minor presents with during visit transitions." Further, A.B. was upset after mother's visit on August 20, 2025, where mother yelled profanities at the visitation coach and shoved father. Based on this, the court acted well within its discretion when it concluded that A.B. was "really affected by what's going on at some of these visits" and reduced visitation in the "hope that these visits can be in a bit more calmer situation and they're consistently attended."

DISPOSITION

The juvenile court's September 15, 2025 jurisdictional/dispositional order is affirmed.

\s\
KRAUSE, J.

We concur:

\s\
ROBIE, Acting P. J.

\s\
MESIWALA, J.