Filed 8/24/16  In re A.F. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E065344 |
| Plaintiff and Respondent, | (Super.Ct.No. J262633) |
| v. | OPINION |
| A.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

A.F. (mother) contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivision (b), regarding her child, A.F. (the child). Mother argues those findings should be dismissed, leaving her as a non-offending parent. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2014, when the child was 12 years old, she was admitted into the Loma Linda Department of Behavioral Health (Loma Linda). She was exhibiting signs of severe anxiety and depression and was experiencing episodes of suicidal ideation. She had scars and open wounds on her wrists, which appeared to be self-inflicted. A referral was submitted to the San Bernardino County Children and Family Services (CFS), alleging sexual abuse of the child by her father, W.F. (father). However, the referral was closed as inconclusive because the child was unable to participate at the time of the investigation or disclose to the social worker the details about the alleged sexual abuse. At the time of the referral, mother did not believe the child's statements of abuse and minimized her anxiety and depressive symptoms as "drama."

On October 2, 2015, CFS received a referral regarding "historical allegations" of sexual abuse by father and general neglect by mother. A social worker interviewed the child on October 6, 2015, at school. The child disclosed a memory that when she

_____

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

was five years old, she woke up naked in her parents' bed, with her father naked beside her. Her mother was not there. The child stated that there was another incident she had not shared with anyone because just the thought of it made her scared. The child told the social worker she was cutting again and showed her lower left arm, which had several markings and scars of her present and prior cutting episodes. The child reported having feelings of suicidal ideation, sadness, the inability to sleep, and a loss of interest in things that once made her happy.

The child further stated that father drank two and one-half liters of vodka every weekend and would become mean and irritable. She said the smallest mistake would make him mad, and he would begin to yell and scream at her for no reason. She said he became a different person, and she did not want to be around him. The child reported that father had been drinking "for as long as she [could] remember."

On October 14, 2015, the social worker interviewed father, who denied sexually abusing his daughter. He explained that when the child was five years old, she would often go into their bedroom when she was feeling scared and get into bed with him and mother. He said that, on one occasion, mother got out of bed, unbeknownst to him. At some point, he turned over, mistook the child for his wife, took her nightgown off, and "ripped off her panties." Father said when he opened his eyes and saw the child, he jumped from the bed and threw up. He said beyond that incident, nothing even remotely sexual had occurred with the child. He added that the child had a habit of telling stories that were simply not true.

3

On October 15, 2015, the social worker interviewed mother, who recalled the incident when the child was five years old. Mother said she was in the kitchen doing dishes when the child came downstairs and said her panties had disappeared. Mother said she went upstairs to see what had happened, and found father sleeping. She woke him up, demanding to know what happened. He initially denied knowing what she was talking about, but then he admitted to taking off the child's panties by mistake. Mother said that, at the age of five, the child was as tall as she was, so she could see how father could mistake the child for her.

Mother further stated that when the child was in seventh grade, she said she wanted to have counseling. However, mother stated that her life was busy, so she did not follow through with the child's request. Then, when the child was in eighth grade, she became severely depressed, cried in her room, had angry outbursts, and was cutting her arms. Mother took her to the San Bernardino Department of Behavioral Health (DBH) to be evaluated. Mother said depression ran on both sides of the family, so she "did not think anything more about [the child's] depression."

Mother further reported that when the child was admitted to Loma Linda in 2014, she thought the child was depressed because she had lost a school friend in a car accident. Mother stated, "I honestly did not believe [the child's] accusations against her father as she did not appear different around her father." Mother later admitted that the child had told her on several occasions that she wanted father out of the home.

4

Mother stated that father had always had a severe drinking problem. She said he consistently drank two or more one-liter bottles of vodka per week. She said she would leave him alone when he drank, and she was aware that the child did not like it when he drank. The social worker said CFS wanted to see her protect the child. Mother said her relationship with father was over and she did not want him in the house, but "financially, [they had to] be together." When the social worker suggested that father move to the maternal grandmother's house, mother insisted that no changes would be made until November 1, 2015. She said she did not understand why the child needed to be protected "immediately[,] not later."

The social worker returned to the child's school to interview her on October 19, 2015, and to see if father had moved out. The social worker asked how the child was doing, and the child said her father drank all weekend and turned mean, so she stayed away from him, as usual. The social worker asked if she was ready to share the other incident with father. The child said that when she was eight years old, she was frightened by something so she went to her parents' bedroom and crawled into bed with mother. The child said she had a clear memory of being next to mother in the bed, but when she woke up, mother was not there, and father was touching and squeezing her breasts with his hands for several minutes. The child said father was awake and knew what he was doing, but did not say anything. The social worker stated that the child continued to exhibit behaviors that were detrimental to her well-being, and that the psychological effects of incest were pervasive. The social worker

5

further noted that mother's disbelief of the allegations, and her allowing father to remain in the home, increased the risk of further sexual abuse and "continue[d] to devastate the child from within."

On October 21, 2015, CFS filed a section 300 petition on behalf of the child, alleging that she came within subdivisions (b) (failure to protect), (c) (serious emotional damage), and (d) (sexual abuse). The child was 13 years old at the time. The petition alleged that mother failed to protect the child from sexual abuse by father, thereby placing her at risk of further sexual abuse. It also alleged that mother knew or reasonably should have known that father engaged in substance abuse, thereby placing the child at risk of neglect and abuse. The other allegations under subdivision (b) and subdivision (d) concerned father, who is not a party to this appeal.[2]

The court held a detention hearing on October 22, 2015. Mother and father were present. Mother objected to the court detaining the child and said she believed she had been protective of the child. She indicated that father was "going to be out of the home." The court found a prima facie showing had been made that the child came within section 300. The court detained the child in foster care and gave CFS the authority to return her to mother if appropriate, and as long as father was not in the home.

---

[2] Since the children's father is not a party to this appeal, we will not discuss any allegations or findings regarding him.

6

*Jurisdiction/Disposition Report*

The social worker filed a jurisdiction/disposition report on November 9, 2015, recommending that the court find the allegations in the section 300 petition true as alleged, and that mother be provided with reunification services. The social worker reported that mother had made contact only with a handwritten note on November 5, 2015, which stated that father had moved out of the home. The social worker expressed her concern that mother had failed to protect the child when she disclosed the first incident nine years prior. Mother minimized the severity of the situation, as evidenced by her allowing father to remain in the home, which resulted in the child's emotional distress.

Attached to the jurisdiction/disposition report was copy of a San Bernardino County Police report dated August 19, 2012. The police report reflected that, on August 19, 2012, mother went to the police station and alleged that father sexually abused the child approximately three to four years prior. The child had not mentioned the allegations to mother out of fear of being punished. Mother wanted the police to investigate the allegations. An officer interviewed the child, who said that, at the age of six, she was in bed alone with father when mother was out shopping. The child was sleeping on her left side, looking away from father, and father was lying on his left side facing the child's back. The child woke up and felt father's hand groping her chest on top of her clothing. She yelled three times for him to stop, and he eventually did. The child reported a second incident, which also occurred when she was six years

old.  She was sleeping alone in the bed with father.  She was on her stomach, with her head turned away from father.  Father gripped her buttocks with his hand, and she told him to stop.  He stopped and the child went back to sleep.  The child reported a third incident, as well.  She said that she was lying in bed with father, when he took her night gown and underwear off.  He grabbed her right wrist with one hand and covered her mouth with his other hand.  Father began slapping her on the stomach and arms.  The child said she fell back asleep and woke up without underwear on and with bruises on her stomach.  The child said she never mentioned these incidents to anyone because she felt that no one would believe her.  When the police interviewed mother, she said she felt that the child was influenced by her sister to make accusations against father.  Mother said the child had never complained about father or shown fear of him.  Mother bathed the child until she was eight years old and said she never saw bruises on her stomach.  Mother told the police she did not feel that the child was sexually abused or that she was in danger.[3]

The court held a jurisdiction/disposition hearing on November 12, 2015.  At the outset, the court noted that there had been some off the record discussions, and mother requested to go to mediation.  The case was referred to mediation.  The court authorized the child to be placed with mother pending further hearing, if appropriate.

---

[3] The record does not appear to show what occurred after the police filed this report.  It merely shows that the report was to be forwarded to detectives for further investigation.

On December 14, 2015, some additional information was filed with the court. The social worker reported that she met with mother on November 21, 2015. Mother advised the social worker that father moved out of the home on November 1, 2015. She said that she and father had not been in a relationship for the past three years, but were living as "roommates." Mother further stated that the child had behavior issues when the family moved to Wrightwood and that the child told her she had been molested by father. Mother said she confronted father, and they all went to the police department. Mother also stated that when the child was in sixth grade, the child told her she was depressed. The child was cutting herself. CFS was contacted, and the child was admitted to Loma Linda for six days. Toward the end of seventh grade, the child became depressed again. The social worker further reported that, on November 22, 2015, the child was returned to mother's care.

On December 17, 2015, the court held a hearing and noted that the matter had gone to mediation that morning; however, nothing was resolved. Mother's counsel indicated she wanted to proceed to contest CFS's recommendations. She argued that mother had been protective of the child. She submitted on the recommendation of placement with mother, but disagreed with the recommendation that mother participate in a parenting program.

After hearing arguments and considering the reports, the court found that the child came within section 300, subdivisions (b), (c), and (d), found father to be the presumed father, and declared the child a dependent. The court denied services to

9

father, but ordered family maintenance services for mother and ordered that the child remain in her custody, under the supervision of the court.

## ANALYSIS

### The Court Properly Took Jurisdiction of the Child

Mother argues there was insufficient evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b). She contends that she did not fail to protect the child from father's sexual abuse, and that CFS provided no evidence as to when father started consuming alcohol, whether he abused the child while intoxicated, or whether she failed to protect the child from abusive behavior due to his excessive use of alcohol. As such, she argues that the jurisdiction order should be reversed. We conclude that the court properly took jurisdiction of the child.

A. *Mother's Claim is Not Moot*

At the outset, CFS contends the issue mother presents is not justiciable. Specifically, it asserts that mother only challenges the jurisdictional allegations sustained as to her, but not as to father. CFS asserts that, because the court is permitted to take jurisdiction over a child for allegations sustained against only one parent, jurisdiction over the child still remains appropriate. We agree. "It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue. [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) "It is commonly said that the juvenile court takes jurisdiction over children, not parents. . . . The court asserts jurisdiction with respect to a child when

10

one of the statutory prerequisites listed in section 300 has been demonstrated. [Citation.] The acquisition of personal jurisdiction over the parents through proper notice follows as a consequence of the court's assertion of dependency jurisdiction over their child. [Citation.] [¶] As a result of this focus on the child, it is necessary only for the court to find that *one parent's* conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.]" (*Id*. at p. 1491, fn. omitted, italics added.)

Here, because mother does not challenge the jurisdictional findings involving father, any decision we might render on the allegations involving her will not result in a reversal of the court's order asserting jurisdiction. The juvenile court would still be entitled to assert jurisdiction over the child on the basis of the unchallenged allegations. (*I.A.*, *supra*, 201 Cal.App.4th at p. 1492.) Furthermore, the court would still be permitted to exercise personal jurisdiction over mother and adjudicate her parental rights, since that jurisdiction is derivative of the court's jurisdiction over the child and is unrelated to mother's role in creating the conditions justifying the court's assertion of dependency jurisdiction. (*Ibid*.)

In her reply brief, mother asserts that the outcome of this appeal is the difference between her being an "offending" parent versus a "non-offending" parent. Such a distinction may have implications with respect to future dependency proceedings in this case. Thus, although dependency jurisdiction over the child will remain in place because the findings based on father's conduct are unchallenged, we

will review mother's appeal on the merits.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

B.  *The Evidence Was Sufficient*

Section 300, subdivision (b), provides that the juvenile court may adjudge a child a dependent of the juvenile court when the child has suffered, or there is a substantial risk that the child will suffer, serious harm or illness, "as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left."  "The standard of proof required in a section 300 dependency hearing is the preponderance of evidence.  [Citation.]"  (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 168 (*Basilio T.*).)

"The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals.  If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.]  We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence.  Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion.  [Citations.]  The appellant has the burden of showing the finding or order

12

is not supported by substantial evidence. [Citation.]" (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333-1334.)

The petition here alleged that mother "failed to protect the child . . . from sexual abuse by the father . . . placing the child at risk of further sexual abuse" and that mother "knew or reasonably should have known that the father . . . engages in substance abuse placing the child . . . at risk of abuse and neglect." There was substantial evidence to support the court's true findings. The child reported that when she was five years old, she woke up naked in her parents' bed, with her father naked beside her. Father corroborated the child's statement. He told the social worker that when the child was five years old, she would sleep in the bed with him and mother. He admitted that that, on one occasion, he turned over in bed and mistook the child for his wife and took her nightgown off and "ripped off her panties." Mother admitted that the child told her that father molested her.

The evidence also showed that on August 19, 2012, mother went to the police station and alleged that father sexually abused the child approximately three to four years prior. Mother wanted the police to investigate the allegations. The child told the police about three separate incidents with father, all of which occurred when the child was alone in bed with him. During one incident, the child woke up and felt father's hand groping her chest on top of her clothing. During the second incident, father gripped her buttocks with his hand. During the third reported incident, the child said father took her night gown and underwear off. Despite knowing all these allegations,

13

mother allowed the child to continue residing with father. Worse yet, the record shows that, even though mother knew father took the child's panties off in bed when the child was five years old, she continued to allow the child to sleep with her and father and still left the child alone in bed with him. Mother did nothing to protect the child or prevent future abuse.

Mother asserts that the child first made the disclosure of sexual abuse in 2012, after which she immediately had the police investigate. She further asserts that, by 2014, both the police and CFS had investigated the child's disclosures and neither took action. Mother states that she did not observe any change in the child's behavior toward father that would have made her suspicious; thus, she could not have protected the child from incidents of sexual abuse that she did not suspect. However, the record shows that father admitted to mother he took the child's panties off when the child was five years old, that the child told her father molested her, and that the child had told her on several occasions she wanted father out of the home. Furthermore, when the child was in seventh grade, she told mother she wanted to have counseling. When the child was in eighth grade, she became severely depressed, cried in her room, had angry outbursts, and started cutting her arms. Although mother took the child to DBH to be evaluated, she said she just thought the child was depressed since depression ran on both sides of the family. When the child was admitted into Loma Linda in 2014, mother attributed the child's depression to her losing a school friend. Mother admitted that she did not believe the child's accusations against father. However, she had more

14

than enough reason to suspect that father had molested the child. Even when the child became depressed and started cutting herself, mother did nothing about the living situation with father. The record shows that when the social worker suggested that father move out, mother did not understand why the child needed to be protected immediately. She insisted that he not move out until November 2015—the month before the jurisdiction hearing. Mother was obviously not concerned about protecting the child.

Mother argues that the jurisdictional hearing took place six years after the last incident of sexual abuse, and that her home was risk free at that time, since father was out of the house. She appears to be claiming that there was no risk of future harm; therefore, the court should not have taken jurisdiction of the child. However, section 300, subdivision (b), provides that the juvenile court may adjudge a child a dependent when "[t]he child *has suffered*, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b), italics added.) In other words, "a showing of *prior physical or sexual abuse is sufficient* to support the initial exercise of jurisdiction under section 300, subdivisions (a), (b), and (d)." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1439, italics added.) Thus, the alleged sexual abuse, despite occurring years before the institution of dependency proceedings, was a sufficient basis upon which to sustain jurisdiction. Moreover, the evidence demonstrates that the child had suffered serious harm. The sexual abuse

from father had severe emotional and psychological effects on her. The record shows that there were repeated instances of the child considering suicide, cutting herself, having severe depression, being unable to sleep, having angry outbursts, and losing interest in things that once made her happy. The child's issues were so serious that she had to be hospitalized at Loma Linda, and she had to seek counseling throughout the years. The child clearly suffered harm from the sexual abuse she endured, and mother failed to protect her from such abuse.

Mother additionally argues that there was insufficient evidence to support the allegation that the child had suffered, or there was a substantial risk that the child would suffer, harm as a result of father's substance abuse, or that she failed to protect the child from such harm. Mother specifically contends there was no evidence as to when father started drinking, whether he abused the child while drinking, or whether mother failed to protect the child from any abusive behavior due to his excessive use of alcohol. However, the court here found true the allegation that mother knew or reasonably should have known that father engaged in substance abuse, which placed the child at risk of abuse and neglect. The evidence clearly showed that mother knew father had a serious drinking problem. She told the social worker that he drank two or more liters of vodka per week. She said she would just leave him alone when he drank. She also knew that the child did not like it when father drank. The child stayed away from him when he drank, as well. Thus, mother knew father drank excessively, and, rather than have him move out to protect the child from his unpredictable

16

behavior, she just avoided him.  Although father did finally move out by the time of the jurisdiction hearing, mother's refusal to force him to move sooner subjected the child to years of emotional harm.  Moreover, given mother's apparent refusal to believe that father had harmed the child in any way, it was reasonable to infer a strong likelihood that, absent supervision by CFS, she would allow him to either return home or maintain contact with the child.

Viewing the evidence in the light most favorable to the juvenile court's order, as we must, we conclude that there was substantial evidence to support the court's jurisdiction over the child.  (*Basilio T.*, *supra*, 4 Cal.App.4th at p. 168.)

DISPOSITION

The juvenile court's jurisdictional findings and order are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P J.

CODRINGTON
J.

17