Filed 6/7/22  In re E.E. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.E., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISAAC Y.,<br><br>Defendant and Appellant. | F083503<br><br>(Super. Ct. No. 17CEJ300349-3)<br><br>**OPINION** |

## THE COURT*

APPEAL from orders of the Superior Court of Fresno County.  Gary L. Green, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

---

\*        Before Peña, Acting P. J., Smith, J. and DeSantos, J.

-ooOoo-

Isaac Y. (father) and Esmeralda E. (mother) are the parents of E.E. (born December 2015). Father appeals the juvenile court's dispositional order denying his request for placement of E.E. pursuant to Welfare and Institutions Code section 361.2, subdivision (a),[1] after the court removed her from mother's custody. He contends there was insufficient evidence to support the court's detriment finding, and that the court abused its discretion in ordering him to participate in a domestic violence assessment with recommended treatment, a mental health assessment with recommended treatment, and parenting classes as part of his reunification plan.

We conclude that substantial evidence did not support the court's detriment finding under section 361.2, subdivision (a), and that the court abused its discretion in ordering father to participate in a domestic violence assessment. Therefore, we reverse the court's order under section 361.2, subdivision (a) and the order requiring father to participate in a domestic violence assessment, but affirm in all other respects.

## FACTUAL AND PROCEDURAL HISTORY

**Petition and Detention**

On July 7, 2021, the Fresno County Department of Social Services (department) filed a petition on behalf of E.E. and her two half siblings pursuant to section 300, subdivisions (b)(1) and (j), alleging mother had a substance abuse problem that negatively affected her ability to care for, supervise, and protect the children.[2] E.E. and her two half siblings were detained and placed in a licensed foster care. The petition identified Isaac Y. as E.E.'s presumed father.

The detention report stated father's whereabouts were unknown and that the department submitted a "Parent Search" form and "Family Finding" request on his

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     E.E.'s two half siblings have a different father and are not part of this appeal.

2.

behalf.  The department recommended detaining E.E. from mother and presenting the case to the family reunification panel to determine if services could be provided to her as she had an extensive history with the department.

On July 8, 2021, at the detention hearing, the juvenile court ordered E.E. removed from mother's custody and ordered reasonable supervised visitation and reunification services for mother.

**Jurisdiction and Disposition**

*Report*

The jurisdiction and disposition report detailed mother's child welfare history. Only one incident mentioned father.  The report stated that in February 2016 the department received an allegation of emotional abuse for E.E. and three of her half siblings by mother.[3]  The reporting party stated mother "was 5150'd" and had threatened to hurt herself and father (who was her boyfriend at the time) with a knife.  Allegedly, E.E. and her half siblings were present during the altercation.  Further investigation revealed the altercation was between mother and her sister, not father.  Mother did not have a knife and did not threaten harm, but she was very upset and was crying.  She could not catch her breath and an ambulance was called.  E.E.'s half siblings reported they were not present for the altercation and that they felt safe at home.  The referral was unfounded.  Additionally, in October 2017, E.E. was removed from mother's custody due to her domestic violence and substance abuse problems.  Dependency was terminated in July 2019.

As far as father's criminal history, his California Law Enforcement Telecommunications (CLETS) report came back as "No Record in the State of California."  A second CLETS was submitted, but again no record was found.

---

**3**      Mother had a total of six children.  E.E. is the fourth child.

The report contained an analysis of the department's consideration of placing E.E. with father. According to the report, father resided in Oregon with his wife, their three-year-old son in common, his teenage stepdaughter, and his adult stepdaughter. He reported he was in a relationship with mother for approximately one year and left their home when E.E. was approximately five months old due to mother "drinking a lot and being involved in a lot of problems." He had not visited E.E. since she was five months old because mother did not allow him to have contact even though he attempted to make contact multiple times. He also said he sent money for E.E.'s care for two years, but did not have proof. Currently, he was employed and had adequate housing. His family knew about E.E. and saw her as his child. He wanted the opportunity to meet her and wanted his family to have a relationship with her. He and his wife wanted to raise her. He denied any drug or alcohol use. A social worker contacted the father's local sheriff's department to conduct a criminal check for father, his wife, and his adult stepdaughter. The sheriff's department did not find anything of concern relating to child safety. The department concluded father did not have a criminal history. Father did not feel he needed reunification services, but was willing to do what was asked of him.

E.E. reported she wanted to visit father and get to know him. She said she wanted "to go with him if given an opportunity." Although she stated she had not met him, she knew who he was because mother had shown her pictures of him. E.E. even knew he had a new spouse.

The department concluded there would be a substantial risk to E.E.'s physical health, safety, and protection if placed with father at that time, and there was no reasonable means to protect her physical health and well-being. The department recommended father be provided reunification services, including a mental health assessment with recommended treatment and parenting classes.

The report attached the initial case plan, which stated father had failed to provide E.E. with adequate care, supervision, and protection because he left her in mother's care,

knowing she had substance abuse issues. As a result, the department wanted father to work with them so that he could demonstrate his ability to care for her. Father's plan included participating in a mental health assessment and a parenting program.

*Hearings*

On August 10, 2021, at the jurisdiction and disposition hearing, father made his first appearance. The juvenile court confirmed there were no allegations against him. Father requested he be assessed for placement. He acknowledged he had not seen E.E. in a "very long time," and wanted to get visits established as soon as possible to reestablish their relationship. The juvenile court informed him there was a recommendation for him to participle in reunification services. Father's counsel stated "[father] would be in favor of that." The hearing was continued.

On October 28, 2021, at the continued jurisdiction and disposition hearing, the juvenile court found true the allegations set forth in the petition. The disposition hearing was continued.

On November 2, 2021, at the continued disposition hearing, the department recommended father receive reunification services. Father's counsel argued father should have placement of E.E. pursuant to section 361.2, subdivision (a). The department disagreed, stating there was a lack of relationship between father and E.E. The department argued it would be detrimental to E.E. to move her to another state with father who left her with mother, knowing she had substance abuse issues. In ruling, the juvenile court stated as follows:

> "With regards to the placement with [father], [father's counsel] touched on some of the factors, but my reading of the case is there are many factors. And one of them, which … is a very important factor, is whether a noncustodial parent has maintained a relationship with the child and the nature of that relationship. And I think we all have to agree that [father] has not maintained a relationship with his child. He left the home and has not had contact with the child.
>
> "Another issue is whether the noncustodial parent has remedied conditions which led to the prior dependency. It appears that the prior dependency

5.

was based on—in part on mother's alcohol abuse. And [father's] child remained with mother. He didn't, as far as I can tell, seek any attempts to place the child in his own custody. He seemed content to leave the child in that situation knowing what the situation was with the mother.

"There is an issue whether he can maintain the safety for this child as well as the child's physical, emotional, social, and educational needs. All factors for the Court to review.

"Another concern is whether the father, … has the ability to obtain and follow through for services for himself and the child. We don't know that apparently at this point. That needs to be explored, whether the minor desires to live with him. It appears from the report that the minor is at least curious about him, maybe open to living with him. I don't know that we have a certainty as to that. I think [child's counsel's] point about suitable housing and whatnot can't be ignored.

"When you look at everything, I don't believe that [father] would be a good fit at this point. He might be with completing, you know, services or working on services. But at this point in time, I don't feel that I can simply place a child who has had no relationship with him and place, you know, and place— [¶] … [¶]

"With that said, the Court is not going to be making placement with the father, …."

The juvenile court found by clear and convincing evidence that placement with father would be detrimental. E.E. was found to be a person described by section 300, subdivisions (b)(1) and (j), and made a dependent pursuant to section 360, subdivision (d). The court ordered reasonable supervised visitation and reunification services for father, including a domestic violence assessment with recommended treatment, a mental health assessment with recommended treatment, and parenting classes. Father's counsel objected to the domestic violence assessment, arguing there was no evidence supporting such an order. The court then set a six-month review hearing.

On November 5, 2021, father filed a notice of appeal.

# DISCUSSION

## I. Substantial Evidence Does Not Support the Juvenile Court's Order Denying Father's Request for Placement Under Section 361.2, Subdivision (a)

Father contends there was insufficient evidence showing that placing E.E. in his care would be detrimental to her. We agree.

### A. *Applicable Law*

When "a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) "Section 361.2, subdivision (a) evinces [a] legislative preference for placement with the noncustodial parent when safe for the child." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262 (*Patrick S.*).)

"A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425.) Factors to consider include the parent's criminal history, substance abuse, or mental illness, any referrals to child welfare services, the age of the child, the child's wishes for placement, any special needs the child may have, and the ability of the parent to meet the child's needs. (*Patrick S.*, *supra*, 218 Cal.App.4th at pp. 1263–1265.) The juvenile court may also consider the nature of the relationship between the parent and child. (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1403.)

"The juvenile court must make the detriment finding by clear and convincing evidence. [Citations.] We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of

7.

fact could find clear and convincing evidence that placement would be detrimental to the child.  Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt."  (*Patrick S.*, *supra*, 218 Cal.App.4th at p. 1262.)  On review, " '[w]e do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts.  Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion.  [Citation.]  The appellant has the burden of showing the finding or order is not supported by substantial evidence.' "  (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1087.)

### B.    Analysis

In finding that placing E.E. with father would be detrimental to her safety, protection, or physical or emotional well-being, the juvenile court considered father's lack of relationship with her, the child's wishes, and father's inability to remedy the conditions leading to the prior dependency.

"An 'alleged lack of relationship between father and [a child] is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a). [Citation.]' "  (*In re Adam H.* (2019) 43 Cal.App.5th 27, 33; *In re John M.* (2006) 141 Cal.App.4th 1564, 1571 [father's absence for four years did not support a detriment finding].)  At the time of the disposition hearing, E.E. was almost six years old and father had not had contact with her since she was five months old.  However, father reported he sent money for E.E.'s care for two years and attempted to make contact multiple times, but mother would not allow it.  Nonetheless, E.E. knew who father was because mother had shown her pictures of him, and she stated she wanted to get to know him.

Although the juvenile court acknowledged E.E. was "maybe" open to living with father, it stated that it did not "have a certainty as to that."  The record reflects E.E. told the social worker she wanted "to go with [father] if given an opportunity."  (See *In re*

8.

*Luke M.*, *supra*, 107 Cal.App.4th at p. 1426 [a child's preference for placement may be considered.]) However, even where a child prefers not to be placed with a noncustodial parent, that preference is outweighed by "the long-term benefits [minor] would gain from becoming an integrated member of a family." (*Patrick S.*, *supra*, 218 Cal.App.4th at p. 1265.) And here, father expressed a strong desire to integrate E.E. into his family. Not only did E.E. express a desire to live with father, but there was no indication placement would be detrimental to her emotional well-being. (*In re A.C.* (2020) 54 Cal.App.5th 38, 43–44, 46 ["[a] court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being" as evidenced by the child's anxiety, inability to sleep over the prospect of moving, and the child's therapist's recommendation against moving].) Although the court noted there was uncertainty about the suitability of father's home for placement, a juvenile court that places a child with a noncustodial parent has the authority to order that a home visit occur within three months. (§ 361.2, subd. (b)(2).) The court could have done so here.

Additionally, the juvenile court improperly considered whether father had remedied the conditions leading to the prior dependency, noting that prior dependency was partly based upon mother's substance abuse and that father had not taken steps to resolve those issues. While the court may consider prior referrals to child welfare services and "may assign … weight to a prior removal order or detriment finding against a noncustodial parent" (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1506; see also *Patrick S.*, *supra*, 218 Cal.App.4th at p. 1263), father was never a part of any prior dependency proceeding and there was no evidence showing he knew of E.E.'s prior removal.

Father's disappearance from E.E.'s life showed he was not an ideal parent, especially since he left her in mother's care when he knew about her substance abuse problems, but that is not enough to support a detriment finding. (See *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789–790 [the juvenile court should focus on

9.

"the essential question of whether [the child's] safety, protection, [or] physical or emotional well-being would be placed at substantial risk in [her father's] care" because "[i]deal parents are a rare—if not imaginary—breed"].) Father wanted to reunify with E.E. and was willing to do what the department asked of him. He had a stable job and housing, with no criminal history. He had a son close in age to E.E. and no one else in his home had a criminal history relating to child safety. E.E. wanted to go with father and expressed no anxiety about doing so. Overall, there was no indication her safety, protection, or physical or emotional well-being would be placed at substantial risk. Thus, we conclude substantial evidence does not support the juvenile court's detriment finding.

## II. The Juvenile Court Abused Its Discretion When It Ordered Father to Participate In a Domestic Violence Assessment

Father further contends the juvenile court abused its discretion by ordering him to participate in a domestic violence assessment with recommended treatment, a mental health assessment with recommended treatment, and parenting classes as part of his reunification plan. We agree the court abused its discretion in ordering father to participate in a domestic violence assessment; however, he forfeited his right to challenge the remaining orders.

### A. *Applicable Law*

Section 362, subdivision (a) provides that "[i]f a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." Such orders may be directed to the parents or guardians of the dependent child and "may include a direction to participate in a counseling or education program." (§ 362, subd. (d).) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (*Ibid*.) However, "[t]he problem that the juvenile court seeks to address need not be described in

10.

the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) Nonetheless, the orders must be reasonable. (See § 362, subd. (d).)

"We review the juvenile court's disposition case plan for an abuse of discretion." (*In re I.R.* (2021) 61 Cal.App.5th 510, 522.) "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.)

### B.     Analysis

At the disposition hearing, father's counsel objected to the domestic violence assessment stating, "Regarding [father], I want to object to … domestic violence as part of his services. I don't think there is anything in there to support that order." Indeed, nothing in the record indicated or even suggested father had a history of domestic violence. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 770–771 [reversing order requiring the father to participate in drug counseling because nothing in record indicated father had a substance abuse problem]; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 172–173 [reunification plan improperly required parents to undergo drug testing and substance abuse therapy in absence of evidence that parents had substance abuse problem].) There was only one incident in the child welfare history that mentioned father. During that incident, mother allegedly threatened to hurt him with a knife. However, further investigation revealed the altercation was actually between mother and her sister. Additionally, we note that although the department recommended father participate in a mental health assessment and parenting classes, it never recommended he participate in a domestic violence assessment.[4]

---

[4]      Respondent's brief argues the juvenile court ordered father to participate in services "after reviewing the social worker's reports and hearing testimony from father

As far as the mental health assessment and parenting classes, father forfeited his right to appeal. "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) When father objected to the domestic violence assessment, he could have lodged objections as to the mental health assessment and parenting classes as well, but he failed to do so. An objection as to all three services would have preserved the point for appeal and would have put on record the precise reasons for the orders directing father to participate in such services.

## DISPOSITION

The juvenile court's finding that it would be detrimental to place E.E. with father under section 361.2, subdivision (a), is reversed. The court's disposition order requiring father to participate in a domestic violence assessment is reversed, but the dispositional orders are affirmed in all other respects.

---

and social worker," and that father had a history of "possession charges and court-ordered substance abuse treatment programs." This information is incorrect as the court did not hear testimony from the social worker and father did not have a criminal history, nor was he ever ordered to participate in substance abuse programs. Respondent cites to pages in the record that do not exist and arguments in the opening brief that were not made.