Filed 3/16/26  In re O.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re O.B., a Person Coming Under the Juvenile Court Law. | |
| | D087066 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ4979) |
| Plaintiff and Respondent, | |
| v. | |
| A.B., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

The San Diego County Health and Human Services Agency detained O.B. (Child) after his mother A.B. (Mother) was arrested on an outstanding warrant and tested positive for methamphetamine use. Drugs and paraphernalia were found within reach of the Child. Early in the case, Mother informed the Agency that she had several mental health diagnoses. Prior to taking medication and participating in therapy for her mental illness, Mother explained she "self-medicated" with alcohol, leading to alcoholism and two incidents of driving under the influence. She stopped her medication and therapy when she became pregnant with Child in 2021. In 2023, she began using methamphetamine to cope with the stress of homelessness.

Mother's case plan included a substance abuse program and a parenting program, which she completed. Later in the case, the Agency developed concerns about Mother's mental health issues and filed a Welfare and Institutions Code[1] section 388 motion, seeking an order that she submit to a psychological evaluation and comply with its recommendations. Before the hearing on the motion, Mother relapsed. At the hearing, the court granted the motion to determine whether Mother's mental health was affecting her substance abuse rehabilitation.

Mother appeals the juvenile court's order requiring her to undergo the psychological evaluation. She argues the order was an abuse of discretion because her mental health issues were not the basis for the court's jurisdiction over Child or an issue during the case. In her view, the order was not "designed to eliminate those conditions that led to the court's finding that

---

[1]     Statutory references are to the Welfare and Institutions Code.

the child is a person described by Section 300" under section 362, subdivision (d). Rather, according to Mother, there was "[n]o evidence" that her mental health was involved in this case or her interactions with Child.

The Agency requested judicial notice of a juvenile court order noting that Mother has since had a psychological evaluation. It contends the completed evaluation makes this appeal moot. Alternatively, the Agency argues the court did not abuse its discretion by ordering the psychological evaluation due to Mother's mental health history, her "difficult behavior" toward social workers, her relapse, and the connection between Mother's mental health issues and substance abuse.

Regardless of mootness, we exercise our discretion to address the merits of this appeal. We conclude the juvenile court did not abuse its discretion by ordering Mother to undergo a psychological evaluation and comply with its findings because of evidence reflecting that Mother's mental health and substance abuse issues were related. Accordingly, we affirm the court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In early January 2025, the Agency received a referral for three-year-old Child after Mother left him without supervision at the East County Transitional Living Center where they resided.[2] On January 22, 2025, Mother tested positive for methamphetamine and had to leave that housing. Two days later, law enforcement found methamphetamine and paraphernalia within Child's reach in the trailer where they were now staying. Mother was arrested based on an outstanding warrant from 2019. At the time of her

---

[2]    At the time, Child's father was incarcerated. Because he is not a party to this appeal, we focus our recitation of facts on Mother.

3

arrest, she told the Agency's social worker she used methamphetamine the day before and on other instances in the previous few weeks, but not while Child was present. Mother denied that the methamphetamine and paraphernalia in the trailer was hers.

Based on Mother's methamphetamine use and the fact that drugs were accessible to Child, the Agency filed a juvenile dependency petition on his behalf under section 300, subdivision (b).[3] At the subsequent detention hearing, the juvenile court found the Agency had stated a prima facie showing on the petition.

During interviews with the Agency, Mother stated she received diagnoses of bipolar disorder, Major Depressive Disorder, General Anxiety, and PTSD after a 2019 conviction for driving under the influence of alcohol (DUI), which was her second DUI. She explained that she "self-medicat[ed]" with alcohol from 2014 to 2019 before receiving proper support using therapy and medication. She took medication until she became pregnant with Child in 2021. Mother told the Agency she began using methamphetamine in late 2023 after becoming homeless, explaining, "Stress will do things to you. Make you make bad decisions." At the time this case began, Mother was not seeing a therapist or taking any medication.

In the Jurisdiction/Disposition Report, the social worker wrote, "Due to the mother's admission that untreated mental health issues were a primary contributing factor when she was last struggling with substance abuse, the Agency is hopeful that the mother will engage in community mental health

---

3     The petition also alleged a failure to provide support under section 300, subdivision (g) because both parents were in custody, but that allegation was later stricken at the Agency's request.

services and develop healthier coping skills." When the social worker asked Mother which services would be most beneficial, she selected drug treatment, individual counseling, and mental health treatment. Mother's case plan included substance abuse treatment and a parent education program.

By April 2025, Mother had moved into a sober living residence, complied with drug testing and tested negative, completed intake with a substance abuse counselor, and enrolled in a parenting program. She had been having positive visits with Child. Mother's relationship with the social worker became somewhat strained, with Mother accusing the social worker of failing to communicate, lying, and setting Mother up to fail. She stated she did not trust the social worker and no longer wished to speak with her.

At the contested jurisdiction and disposition hearing, the juvenile court made a true finding on the petition, ordered liberal supervised visitation for Mother, and ordered reunification services consistent with her case plan. Child remained placed with relative caregivers.

By August 2025, Mother completed her substance abuse program and parenting program. She had consistently visited Child. Mother's visits went well, and she began having unsupervised visits in the Agency's office on August 11, 2025. After August 22, 2025, however, she missed most visits.

Around that time, a different social worker assigned to the case reported having some difficult interactions with Mother, during which she became angry. During multiple calls, Mother raised her voice or yelled and "often express[ed] frustration towards the Agency and the [social worker]."

The Agency brought a section 388 petition on August 15, 2025, requesting that the juvenile court order a psychological evaluation and compliance with the resulting recommendations as part of her case plan. The Agency sought this order due to Mother's untreated mental health diagnoses,

declining the Agency's Treatment Evaluation Review Management (TERM) therapy referral, and suspicion of her tampering with urine samples for drug testing. In the report, the Agency explained that "mental health and substance use can be interconnected . . . [B]ecause the mother has mentioned her history of mental health concerns, a psychological evaluation would offer a comprehensive understanding of the mother's needs and ensure that appropriate services and support are offered to ensure her sobriety is supported. The Agency is making this request due to the family's complex history and dynamics, lack of accountability and concerns regarding possible underlying mental health needs and the mother declining to provide information to the social worker." At the time, Mother was seeing a short-term therapist through her substance abuse treatment program but would not authorize the provision of information to the Agency.

In early September 2025, Mother left her sober living housing voluntarily and did not provide the Agency a new address. Mother missed drug tests on September 11 and September 26, 2025. On September 30, 2025, Mother called the social worker and reported that she had relapsed on or around September 12 and was in an inpatient detox center. She attributed her relapse to being a victim of domestic violence committed by Father and trauma during childhood. In late August, Father had tried to contact Mother in violation of a court order. The social worker explained to Mother that she could benefit from therapeutic services because mental health is intertwined with substance abuse, and determining what leads to the substance abuse could help her remain sober.

The juvenile court held a hearing on the Agency's section 388 petition at the end of October 2025. In addition to the information provided in its reports, the Agency noted it believed Mother was no longer seeing the short-

6

term therapist and stated he had reported not knowing about her diagnoses. According to the Agency, "the change of circumstances is that [M]other has not really been forthcoming about her mental health issues and the Agency really believes that a psychological evaluation would be able to further clarify what diagnosis she has and the best way . . . to refer her to services." The Agency also stated it was "specifically concerned about [M]other's substance abuse issues being interconnected with these diagnoses that she has disclosed." Minor's counsel agreed with the Agency.

Mother argued the Agency was aware of her mental health diagnoses since the onset of the case but did not include mental health services in the case plan, and there was thus no change in circumstances. Rather, the case plan was narrowly tailored to address the issue leading to detention, which was substance abuse. Mother believed that relapse and disagreements with the Agency do not justify a psychological evaluation.

The juvenile court granted the petition and ordered Mother to undergo a psychological examination, which would address "whether mental health concerns [are] [a]ffecting [M]other[']s substance abuse rehabilitation," and to comply with its recommendations. At the hearing, the court explained that it understood the Agency was previously aware of Mother's mental health issues, but "it's a disservice to [M]other to let the case progress without really knowing what issues there are that could be affecting . . . the use of substances. [¶] Here, we have knowledge that there are some—some mental health issues. We don't have specifics as to what they are. We would through a diagnosis. The information that the Agency has is very limited because of no release of information to allow for that information to be transferred." The court found "the Agency's own observations of [M]other's behavior and interactions combined with the self-disclosure combined with

7

these other things" justified an evaluation.  It noted:  "there has been relapse and there is not a lot of explanation as to why that would be other than the suspicion that mental health issues are playing a role."  By ordering the evaluation, the court sought "to make sure that the substance use treatment is being processed appropriately and with all psychological considerations in place."  Thus, the court concluded, there had been a slowly revealed change in circumstance, and it was in Child's best interest for Mother to undergo the psychological evaluation.  Mother filed this appeal of the order granting the section 388 petition.

## DISCUSSION

A. *Mootness*

We first address the Agency's contention that this appeal is moot because Mother completed the psychological evaluation.  (*In re Andres G.* (1998) 64 Cal.App.4th 476, 484 ["We find the psychological evaluation ordered by the court has been completed and the issue is moot."].)  The Agency requests judicial notice of a minute order from December 18, 2025, showing Mother completed the psychological evaluation.  We grant judicial notice to consider the mootness argument.  (Evid. Code, §§ 452, subd. (d)(1), 459; Cal. Rules of Court, rule 8.252(a).)

An appeal is moot, including in the dependency context, "when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks."  (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  There must be a specific, non-speculative legal or practical consequence that could be avoided.  (*Id.* at p. 282.)

8

Even if an appeal is moot, courts have discretion to review the merits of the dispute when, inter alia, the findings could be prejudicial to the appellant or impact the dependency proceeding. (*In re D.P., supra*, 14 Cal.5th at pp. 282, 285.) Additionally, "where . . . the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate." (*Id.* at p. 286.)

Mother contends appellate review could avoid the legal and practical consequences of "information obtained from the psychological evaluation . . . be[ing] used negatively against mother to support any recommendations or finding in this case or any future dependency case." But she has not identified with specificity any non-speculative consequences or an available remedy. Specifically, it is unclear that disregarding relevant findings of a psychological evaluation would be an available remedy in a dependency case, particularly considering "[t]he overarching goal . . . is to safeguard the welfare of California's children." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) On the other hand, the court's order required Mother to comply with its recommendations. Depending on the contents of the evaluation, continuing compliance may be considered an ongoing harm.

So even assuming the appeal is moot—an issue we do not decide—we exercise our discretion to consider its merits because mootness would be the result of Mother's prompt compliance with the court's order and because the evaluation could impact the dependency proceeding.

B. *Propriety of Psychological Evaluation*

Mother contends the juvenile court abused its discretion under section 362, subdivision (d) by ordering her to undergo a psychological evaluation

9

because the basis of the court's section 300 finding was her substance abuse.[4] We disagree.

"'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) This includes "direct[ing] any reasonable orders to the parents or guardians . . . as the court deems necessary and proper to carry out this section, including . . . a direction to participate in a counseling or education program . . . . The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) We review such orders for abuse of discretion. (*Brianna V.*, at p. 311.)

When fashioning its orders, "[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition." (*Briana V., supra*, 236 Cal.App.4th at p. 311, citing *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006–1008 (*Christopher H.*).) Rather, "the court may consider the evidence as a whole." (*Briana V.* at p. 311.) "[W]hen the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan," and,

_____

4     Mother does not challenge the juvenile court's findings based on the requirements of section 388, subdivision (a). (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1194 ["Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest."].)

indeed, "would [be] remiss if it failed to address" those issues. (*Christopher H.*, p. 1008.)

Mother argues the juvenile court abused its discretion because "[n]o evidence showed mother's mental health was an issue in this case or that it placed [O.B.] at risk of harm during visits." To the contrary, specific evidence exists that Mother's substance abuse is related to her mental health issues.[5] She told the Agency that she self-medicated with alcohol prior to receiving proper mental health support. After she stopped receiving that support, she began using methamphetamine, which she explained she did to cope with stress. Despite completing a substance abuse program, Mother relapsed, suggesting further intervention might be warranted. Although Mother saw a therapist related to that program, he was a temporary therapist and unaware of her prior diagnoses. She refused to participate in TERM therapy. Based on these circumstances, the court reasonably ordered a psychological evaluation and compliance with its recommendations to determine "whether mental health concerns [are] [a]ffecting the mother[']s substance abuse rehabilitation." Contrary to Mother's assertion, examining whether her substance abuse issues could only be fully addressed by addressing underlying mental health concerns reasonably supports the goal of reunification.

---

[5] Both legal and psychological literature recognize the significant connection between substance abuse and mental health. (See, e.g., Barnes, *The Perfect Storm: Substance Abuse, Mental Illness, and Rural America* (2022) 20 U. N.H. L. Rev. 317, 325.)

The cases cited by Mother do not persuade us otherwise.  In *In re Basilio T.*, the court concluded the evidence did not support a substance abuse component of the case plan where there was no substance abuse specific evidence, and the only evidence was "the social worker's observation that [the mother] behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 172 )  Here, the record contains evidence that Mother had previous mental health issues that were connected to substance abuse.  It was reasonable for the juvenile court to make orders designed to determine whether her current substance abuse problem was affected by her known mental health history.

Nor is *In re Drake M.* (2012) 211 Cal.App.4th 754 relevant.  There, the court concluded the father's medical marijuana use at the recommendation of a doctor was insufficient in itself to establish any risk of serious physical harm or illness to the child. (*Id.* at pp. 768–769.)  Although there was an independent basis for jurisdiction related to the mother, it was an abuse of discretion to order the father to participate in drug counseling and screening based on his medical marijuana use, which was not alleged to amount to substance abuse. (*Id.* at p. 770.)  In this case, Mother's methamphetamine abuse undoubtedly placed Child at risk of harm, and there was evidence suggesting mental health concerns contributed to her substance abuse.

## DISPOSITION

We affirm the juvenile court's order.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.